ELLIS, Judge.
This is a suit for damages arising out of a boating accident which occurred on Blind River about eight miles upstream from Lake Maurepas on July 12, 1964. As a result of the accident, plaintiff’s foot was severely damaged and he was awarded judgment for $19,336.40 against defendant and his insurer, State Farm Fire and Casualty Company. From this judgment, defendants took a suspensive and devolutive appeal.
It appears from the record that on the above date plaintiff and defendant, together with two young ladies, were engaged in water skiing on Blind River. The boat was the property of the defendant and at the time of the accident, plaintiff was in the water attempting to teach Miss Kathy Smith, who had never before water skied, how to get up on the skis.
According to the plaintiff, Miss Smith had just fallen after having been pulled only a very short distance by the boat and the boat circled around to come by her again so that she could make another attempt. Mr. Roy testified that the boat appeared to be stopped and that he wanted to get a cushion from the front seat to help keep him up in the water, since the ski belt which he was wearing was not sufficient and he was beginning to become tired. He *110 stated that he swam up to the boat, reached into the front seat to get the cushion, and then proceeded to push off from the boat with his legs. At that time, for some reason, his right leg went up under the boat and was severely cut by the propeller of the outboard motor. He stated that when he went up to the boat he assumed that the motor was in neutral since he was near the boat and it was customary procedure to keep the motor in neutral when there were swimmers nearby.
According to Mr. Swayze, Miss Smith had fallen from her skis after having been pulled some 200 feet so that she was approximately that distance from Mr. Roy when she fell. Mr. Swayze stated that he circled the boat around and he came up behind Mr. Roy who grasped the side of the boat. He stated that at the time he came alongside him, he had the motor in neutral. He asked Mr. Roy to come aboard, but Mr. Roy declined stating that he preferred to hang on the side of the boat. Thereupon, Mr. Swayze put the boat in gear and commenced to move toward Miss Smith. He testified that when he arrived in the vicinity of Miss Smith, Mr. Roy suddenly pushed off from the boat and at that time, the accident happened.
The other witnesses to the accident were the two young ladies, Miss Kathy Smith, who was in the water at the time it happened, and Miss Brenda Smith, who was in the boat.
The main question to be decided in this case is what the duty of the operator of a water craft is to those in the water around it, and, secondly, whether, if the defendant was negligent in the discharge of this duty, the plaintiff was contributorily negligent.
The only general statutory authority relative to operation of pleasure craft in the waters of this state is the Uniform Pleasure Boating Act, R.S. 34:850.1 et seq., which was adopted in this state in 1958. R.S. 34:850.24 provides as follows:
“The owner of a watercraft shall be liable for any injury or damage occasioned by the negligent operation of such watercraft, whether such negligence consists of a violation of the provisions of the statutes of this state, or in the failure to observe such ordinary care in such operation as the rules of the common law require. The owner shall not be liable, however, unless such watercraft is being used with his or her express or implied consent. It shall be presumed that such watercraft is being operated with the knowledge and consent of the owner, if, at the time of the injury or damage, it is under the control of his or her husband, wife, father, mother, brother, sister, son, daughter or other immediate member of the family. Acts 1958, No. 367, § 24.”
R.S. 34:850.15 relates to water skiing procedure, and sub-section C thereof provides:
“All motorboats having in tow or otherwise assisting a person on water skis, surf-board, or similar contrivance, shall be operated in a careful and prudent manner and at a reasonable distance front persons and property so as not to endanger the life or property of any person. Acts 1958, No. 367, § 15.”
No other authority in this state has been cited to us on these points, and we know of none. We hold that the operator of a pleasure boat is held to a duty of ordinary care in the operation of his craft.
What we must determine in this case is if the defendant failed to fulfill that duty by keeping his outboard motor in gear while a member of his crew, or a guest, was swimming in the water in the immediate vicinity of the boat.
There appears in the record the testimony of Dr. Louis J. Capozzoli, Jr. who qualified as an expert in boat handling and the operation of small boat engines. He testified that when a boat has swimmers, skin divers or water skiers nearby, or when *111 they are getting into or out of the boat, the engine should be put in neutral or shut off altogether. Dr. Capozzoli testified that a boat the size of the one involved in this case, with a similar outboard motor, would be moving through the water at a speed of one or two knots with the motor idling in gear. This testimony mitigates against plaintiff’s testimony that the boat was either motionless in the water, or moving imperceptibly at the time he swam up to it. Other testimony in the case, by plaintiff and by Miss Brenda Smith, who was in the front seat of the boat, indicates that plaintiff obtained the cushion from the front seat of the boat, and pushed off from that point. If the boat had not been in motion, he could hardly have been injured by the outboard motor, which was, of course, mounted at the stern of the boat.
We find that the boat must have been moving perceptibly at the time of the accident, and that plaintiff, being familiar with small boats, should have known that the gears were engaged when he pushed off from the side of the boat. This being the case, it is not material whether we accept plaintiff’s or defendant’s version of how the accident happened, although we do not feel that plaintiff has proved his version by a preponderance of the evidence.
We think it clear that the defendant was negligent in the operation of his boat. If his own version is correct, he should not have operated the boat at any speed with a swimmer hanging on to the side. If plaintiff’s version is correct, the motor should have been put in neutral when plaintiff approached the boat.
On the other hand, we find that plaintiff, if his own version of the accident is correct, was contributorily negligent in approaching a boat which was obviously in motion and, therefore, in gear. If defendant’s version of the accident is correct, plaintiff certainly assumed the risk of accident by hanging onto, and subsequently pushing off from, a boat in motion in the water.
We find the judgment of the trial court to be erroneous. There will, therefore, be judgment herein in favor of defendants and against plaintiff, rejecting plaintiff’s demand at his cost.
Reversed and rendered.